UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PATRICK TAKUANYI,

                                              Civil No. 19-1762 (JRT/ECW)

          Plaintiff,

v.

                                        **MEMORANDUM OPINION AND ORDER**
CITY OF SOUTH ST. PAUL POLICE         **DENYING PLAINTIFF'S MOTIONS**
DEPARTMENT,

          Defendant.

Patrick Takuanyi, 1675 Highway 96 East, White Bear Lake, MN 55110, *pro se* plaintiff.

Evan Tsai, **LEAGUE OF MINNESOTA CITIES**, 145 University Avenue West, Saint Paul, MN 55103, for defendant.

Plaintiff Patrick Takuanyi initiated this action, alleging federal civil rights claims against Defendant City of South St. Paul Police Department in connection with citations Takuanyi received from the department's officers and a message written on one of the citations.  After the Court issued an order to dismiss the case with prejudice in response to a stipulation of dismissal signed by both parties' attorneys, Takuanyi filed a motion to vacate the dismissal.  After holding an evidentiary hearing and carefully considering the entire record and arguments presented in written submissions and at the hearing, taking into account the credibility of the evidence, and examining applicable law, the Court will deny Takuanyi's Motion because he has failed to meet his heavy burden of showing his

attorney lacked authority to enter into a settlement on his behalf. Takuanyi also filed a motion requesting the Court make an adverse inference based on allegedly destroyed evidence which the Court will also deny.

## BACKGROUND

Takuanyi was a resident of South Saint Paul, Minnesota. (Compl. ¶ 1, July 2, 2019, Docket No. 1.) Over a period of several years, South Saint Paul code and law enforcement ticketed and towed several vehicles owned by Takuanyi or his business. (*Id.* ¶¶ 11–13, 16–18.) South Saint Paul code enforcement began to regularly inspect his property for code violations, and Takuanyi received phone calls and letters from South Saint Paul. (*Id.* ¶¶ 14, 16–17.) Takuanyi alleges that a racial epithet was written on one of the tickets. (*Id.* ¶ 21.) He also alleges that at some point a process server hired by South Saint Paul damaged his door and door frame and that the process server's gun frightened his children. (*Id.* ¶¶ 32–34, 36.)

Takuanyi brought this action in July 2019 against the City of South Saint Paul Police Department ("SSPPD") alleging claims of (1) racial discrimination and disparate treatment under 42 U.S.C. §§ 1981, 1983, and 1985 and (2) negligent infliction of emotional distress. (*Id.* ¶¶ 26–41.)

Takuanyi has had a series of problems finding and retaining counsel, repeatedly delaying the case. (Order at 1–4, Apr. 29, 2021, Docket No. 29.) On June 18, 2021, attorney David Wilson noticed his appearance on behalf of Takuanyi. (Notice of Appearance, June 18, 2021, Docket No. 31.)

On June 21, 2021, counsel for SSPPD notified the Court that a scheduled settlement conference was no longer necessary because the parties had reached a settlement agreement. (Letter to District Judge, June 21, 2021, Docket No. 32.) The following day counsel for both parties—Evan Tsai on behalf of SSPPD and Wilson on behalf of Takuanyi—filed a stipulation of dismissal with prejudice of all Takuanyi's claims. (Stip. Dismissal with Prejudice, June 22, 2021, Docket No. 33.) Accordingly, on June 30, 2021, the Court issued an order dismissing the case with prejudice. (Order, June 30, 2021, Docket No. 36.)

On July 20, 2021, Takuanyi filed a Motion to Reopen his case alleging that he "had nothing to do with the dismissal with prejudice of [his] case" and that Wilson settled the case without Takuanyi's consent. (Mot. to Reopen at 1, July 20, 2021, Docket No. 38.) The Court denied Takuanyi's Motion. *Takuanyi v. City of S. St. Paul Police Dep't* ("*Takuanyi I*"), No. 19-1762, 2021 WL 5545230 (D. Minn. Nov. 26, 2021). Takuanyi appealed the denial, and the Eighth Circuit remanded for the Court to hold an evidentiary hearing as to whether Takuanyi can demonstrate that Wilson lacked authority to enter into a settlement and to dismiss his case. *Takuanyi v. City of S. St. Paul Police Dep't* ("*Takuanyi II*"), No. 21-3719, 2022 WL 1786602 (8th Cir. Mar. 2, 2022).

After receiving the mandate, the Court held an evidentiary hearing on August 29, 2022, to hear evidence regarding Wilson's authority. (Min. Entry, Aug. 29, 2022, Docket No. 70.) The Court questioned Takuanyi, Wilson, and Tsai under oath and heard argument

from Tsai and Takuanyi. Wilson appeared only as a fact witness and did not present any argument on the Motion as he no longer represents Takuanyi.[1]

Takuanyi has also filed various documents with the Court alleging that Wilson destroyed or refuses to return his case file which Takuanyi claims would help him demonstrate that he would not have accepted the settlement. (1st Demand for Return of File, Mar. 14, 2022, Docket No. 60; 2nd Demand for Return of File, Mar. 25, 2022, Docket No. 63.) Wilson filed affidavits providing tracking information and asserting that he does not have Takuanyi's file as he returned it via FedEx on June 18, 2021, which it delivered to Takuanyi's residence on June 21, 2021. (1st Decl. of David Wilson, Mar. 16, 2022, Docket No. 61; 2nd Decl. of David Wilson, Mar. 29, 2022, Docket No. 64.) Takuanyi then filed a motion styled a "Motion for Return of File Spoilation [sic] of Evidence" asking the Court to (1) draw a negative inference against SSPPD because, he alleges, Wilson and Tsai are working closely together, and Wilson destroyed the evidence or (2) to require Wilson to pay Takuanyi $150,000. (Mot. Spoliation of Evidence, May 17, 2022, Docket No. 66.)[2]

---

[1] Although attorney-client privilege may not apply or Takuanyi may have waived it by sending the Court and Tsai communications between himself and Wilson, to the extent that attorney-client privilege did apply, Takuanyi explicitly waived it for the issues in dispute at the evidentiary hearing after the Court explained the nature of the privilege.

[2] Takuanyi also filed a document addressed to the Minnesota Office of Lawyers Professional Responsibility ("OLPR") with the subject line "Request to reopen case against Attorney Wilson based upon newly discovered evidence." (Req. to Reopen Case Against Att'y Wilson, Mar. 31, 2022, Docket No. 65.) As this document is addressed to the OLPR and relates to a complaint Takuanyi filed with the OLPR regarding Wilson and Takuanyi already has a Motion to Reopen pending, the Court does not consider this a separate motion under Federal Rule of Civil Procedure 60(b)(2). Still, the Court considered the evidence Takuanyi presented in this filing.

**FINDINGS AND ANALYSIS**

I.   **MOTION TO REOPEN**

"Once it is shown that an attorney has entered into an agreement to settle a case, the party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given.  This is a heavy burden." *Harris v. Ark. State Highway & Transp. Dep't*, 437 F.3d 749, 750–51 (8th Cir. 2006) (quotation omitted).  Therefore, Takuanyi "bears a 'heavy burden' of proof" to show that Wilson did not have authority to enter a settlement.  *Takuanyi II*, 2022 WL 1786602, at *1 (quoting *Turner v. Burlington N. R. Co.*, 771 F.2d 341, 346 (8th Cir. 1985)).  This burden cannot be met by "conclusory" statements; it can only be met "through competent evidence" that establishes a lack of authority.  *Surety Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 583 (8th Cir. 1984).[3]  "Express authority 'can be created by written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him [or her] to act in a particular manner on the principal's account.'" *Harris*, 437 F.3d at 751 (alteration in original) (quoting *Turner*, 771 F.2d at 345).

---

[3] There is some ambiguity as to exactly what type of authority Takuanyi must show did not exist.  *See Harris*, 437 F.3d at 751; *Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 646 n.2 (8th Cir. 1987).  Because under either under an "actual, implied, or apparent" standard or an express authority standard Takuanyi has not demonstrated that Wilson did not have authority, the Court will conduct its analysis under the more stringent express authority standard.  *See Harris*, 437 F.3d at 751.

### A. Evidence from Filings and the Evidentiary Hearing

Takuanyi has submitted several filings with the Court relevant to the Court's findings.[4] On July 13, 2021, Takuanyi sent a letter to the Magistrate Judge alleging that he had not given Wilson permission to settle his case for $1,000 as agreed to by Wilson and Tsai. (Letter to Magistrate Judge at 1, July 13, 2021, Docket No. 45.) Instead, Takuanyi claims that Wilson knew he would only settle for $150,000, but that instead Wilson "intimidate[ed] and threat[ened]" Takuanyi by saying that his "case was going to be dismissed." (*Id.*)

In his letter to the Magistrate Judge, Takuanyi enclosed correspondence that took place after the parties filed the stipulation of dismissal: (1) a letter Wilson sent to Takuanyi; (2) a letter Takuanyi sent to Wilson; and (3) a letter Takuanyi sent to Tsai.[5]

First, Wilson sent Takuanyi a letter on July 1, 2021, in response to Takuanyi's refusal to sign the settlement agreement. (Letter to Magistrate Judge, Ex. 1.) In the letter, Wilson documents his representation of Takuanyi, the settlement negotiations, and urges Takuanyi to sign the settlement agreement. (*Id.*) Wilson advises Takuanyi that this is the

---

[4] As Takuanyi is now proceeding pro se, the Court liberally construes his legal arguments and holds them to a less stringent standard than formal pleadings drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When, however, Takuanyi makes factual statements, the Court considers the credibility and accuracy of these statements as it would a statement from any other fact witness.

[5] Takuanyi also sent the communications between himself and Wilson directly to Tsai. (Mem. Opp. Mot. to Reopen at 2, July 23, 2021, Docket No. 42; Aff. of Evan C. Tsai, July 23, 2021, Docket No. 43.)

best resolution he will receive and explains why he believed Takuanyi did not have viable claims or evidence supporting claims. (*Id.* at 1–3.) According to the letter, Takuanyi communicated to Wilson on July 1 that he had received a second opinion from someone who believed he had a viable case. (*Id.* at 2.)

Wilson's letter describes the negotiation process for the settlement including a final offer from SSPPD for $1,000 in return for dismissing all claims. (*Id.* at 2.) Wilson asserts that "I presented Defendants' offer to you, and **you accepted**. I told you I agreed with your decision . . . . I told you that you need to sign a release to receive the funds. You indicated that you were in a store, would review it when you returned home, and sign accordingly." (*Id.* (emphasis added).) According to the letter, when Takuanyi did not return the signed agreement, Wilson's office contacted Takuanyi who "communicated a novel idea of starting the case anew and now refus[ed] to sign." (*Id.*) Wilson asserts that Takuanyi's "time to object has long passed, and [Takuanyi] **never communicated [his] objection**." (*Id.* (emphasis added).)

The letter also notes that Wilson had communicated Takuanyi's agreement to the $1,000 settlement and stipulated to the dismissal because, according to Wilson, Takuanyi had accepted the settlement. (*Id.*) Wilson then advised him that the Court had dismissed the case with prejudice and informed him that this meant Takuanyi "cannot start the case based on the same or similar claims again." (*Id.*) Finally, the letter includes the settlement

agreement and release including an agreement to dismiss this case with prejudice. (*Id.* at 4–5.)

Second, Takuanyi sent a letter to Wilson on July 7, 2021, in response to Wilson's letter. (Letter to Magistrate Judge, Ex. 3, July 13, 2021, Docket 45-3.) The letter indicates his disagreement with Wilson's letter, his desire for the case to go to trial, and that "[a]s [he] said before [he]'ll **not accept anything less than $150,000.00 to settle**." (*Id.* at 4 (emphasis added).)

Third, Takuanyi sent a letter to Tsai, SSPPD's attorney. (Letter to Magistrate Judge, Ex. 2, July 13, 2021, Docket 45-2.) The letter was sent no earlier than July 7 because it references his July 7, 2021, letter to Wilson. (*Id.* at 2.) This letter also indicates that he rejected the settlement because the "amount was insignificant." (*Id.* at 1.) Here Takuanyi again asserts that he did not tell Wilson to settle for $1,000 and that the settlement "wasn't [his] wish." (*Id.*)

On July 20, 2021, Takuanyi filed this Motion to Reopen the dismissal. (Mot. to Reopen.) In it, Takuanyi asserts that he "had nothing to do with the dismissal with prejudice of [his] case." (*Id.* at 1.) He claims that Wilson and Tsai settled without his consent. (*Id.*) He also alleges that Wilson and Tsai "connive[d] with each[other] to commit a crime against" Takuanyi and that Wilson was attempting to damage Takuanyi's case for Wilson's own benefit. (*Id.* at 1–2.)

In his demands to return his file, Takuanyi alleges the file contained "a note from my prior attorney that indicated he could and would settle this case for $150,000.00 and no less." (1st Demand for Return of File at 1; *see also* 2nd Demand for Return of File at 2.)

At the evidentiary hearing, Takuanyi's testimony lacked detail and many details were inconsistent with the record. For example, although Takuanyi stated he told Wilson the first time they met that he would only accept a settlement of at least $150,000, he stated this conversation occurred in July 2021. This is after Wilson asserts Takuanyi accepted the settlement, the stipulation was filed, and the Court entered judgment. One possible conclusion is that Takuanyi misremembered the date which is supported by him struggling to remember what year this took place. Another possible conclusion is that the first time he communicated this was in fact in July 2021 after the case was already dismissed. For other details, he could not remember them including any other facts surrounding his call with Wilson or the Court had to prompt him with facts before Takuanyi was able to answer the question. Takuanyi also testified that other than his call with Wilson wherein Wilson communicated the settlement amount, Takuanyi never again spoke with Wilson or anyone else in Wilson's office. Takuanyi's testimony, however, is inconsistent as he later stated he rejected the offer and then replied the next day that he would only accept $150,000. Wilson's testimony at the hearing and the letter Wilson sent Takuanyi on July 1, 2021, also contradict Takuanyi's claim that he never spoke with Wilson or anyone from Wilson's office again. The letter indicates that Wilson's office contacted

Takuanyi and Takuanyi communicated that he would now refuse to sign and that on July 1, 2021, Takuanyi communicated with Wilson's office. (Letter to Magistrate Judge, Ex. 1 at 2.)

Wilson testified with explicit details about his conversations with Takuanyi. He stated that on June 18 (1) Takuanyi authorized him to make a demand of $15,000 which SSPPD rejected, (2) Takuanyi then authorized a $2,000 counteroffer to SSPPD's $450 offer which SSPPD rejected as well, and (3) SSPPD made a $1,000 final offer. Wilson testified that he presented this offer to Takuanyi as well as providing other details of their discussion. Wilson provided specific details including the date, time, and his location for these conversations. Although Wilson stated he took notes about the discussions, he no longer has them because they were in the file he says he sent back to Takuanyi. Wilson further testified that on June 21 he prepared the settlement documents with Tsai, emailed them to Takuanyi, and then had a phone conversation with Takuanyi about them while Takuanyi was in a store. Wilson testified that Takuanyi told him that he would review them later, but that the documents have expired so he is unable to verify whether Takuanyi did in fact look at them. Wilson could not recall if he personally ever spoke with Takuanyi again but knew that his staff contacted him multiple times and that at some point he explained the effect of the dismissal. Once Wilson became aware that Takuanyi had filed a complaint against him, Wilson indicated he stopped communicating with Takuanyi except in writing. In addition to describing his interactions with Takuanyi,

Wilson described his standard practice of noting when a client has authorized a settlement amount in his notes and of discussing the effects of accepting a settlement. Wilson testified that he followed this practice here including discussing Takuanyi's health and the need to move on especially as he no longer lived in South St. Paul.

Although Tsai could not testify as to Wilson's and Takuanyi's communications, he corroborated the portions of Wilson's testimony he was able to. This includes that Wilson offered a $15,000 settlement and their exchange of phone calls and messages on June 18.

After listening to Wilson's testimony, Takuanyi asserted that Wilson's statements were false. He specifically denied authorizing a demand of either $15,000 or $2,000 and again denied accepting $1,000. Takuanyi provided no additional evidence or testimony supporting these statements at the hearing.

### B. Findings

The Court concludes that Wilson's testimony on this matter is generally credible. It is consistent with and supported by the record, especially the July 1, 2021, letter Wilson sent Takuanyi. To the extent possible, Tsai's testimony corroborated Wilson's testimony. Takuanyi asserts that Wilson is colluding with Tsai and somehow benefits from the dismissal of this case but presents no evidence supporting these assertions. The Court finds no evidence in the record that supports a finding that Wilson is biased or is otherwise inaccurately recounting his recollection of the events.

Although the Court does not find that Takuanyi's testimony and allegations inaccurately state his recollections, considering Takuanyi's admitted memory problems

and his testimony's lack of details and inconsistencies both internally and with the record, the Court concludes that Takuanyi's testimony that he never authorized Wilson to accept a settlement is not credible. Although he claims to have never authorized the settlement, he provides nothing beyond his own say so that is directly and in detail refuted by his own attorney. This evidence is insufficient to meet Takuanyi's heavy burden to demonstrate that Wilson did not have express authority to enter into the settlement and dismiss the case. *See Surety Ins. Co.*, 729 F.2d at 583. Instead, the evidence supports a finding that Takuanyi gave Wilson express authority to agree to the $1,000 settlement on June 18, 2021, and did not attempt to withdraw this authority until after it had been communicated to SSPPD through Tsai and after the stipulation was filed on June 21, 2021.

In sum, based on a thorough review of the record and the testimony at the evidentiary hearing, Takuanyi has not met his heavy burden through sufficient competent evidence to demonstrate Wilson lacked express authority. Therefore, the Court will not vacate the entry of dismissal with prejudice and will deny Takuanyi's Motion to Reopen.

**II.    SPOLIATION MOTION**

Takuanyi has also filed a motion asking the Court to draw an adverse inference against the SSPPD if Wilson does not or cannot return his file to him. He contends this is appropriate because (1) Wilson spoliated the evidence necessary to prove he did not consent to the settlement and (2) Wilson is now colluding with Tsai as counsel for SSPPD so SSPPD should be held accountable for Wilson's actions.

The Court also possesses inherent authority to impose sanctions including making adverse inferences "[e]ven in the absence of a discovery order." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002). This authority, however, should be used sparingly. *Sentis Grp., Inc. v. Shell Oil Co*, 559 F.3d 888, 900 (8th Cir. 2009).

To establish spoliation, the moving party must show (1) that the adverse party destroyed potential evidence, (2) the evidence was discoverable, and (3) the moving party was prejudiced by its destruction. *Nicollet Cattle Co. v. United Food Grp., LLC*, No. 08-5899, 2010 WL 3546784, at *4 (D. Minn. Sept. 7, 2010). A spoliation sanction also requires "a finding of intentional destruction indicating a desire to suppress the truth." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (internal quotation and citation omitted).

The Court will deny Takuanyi's Motion. Wilson is not an adverse party as he was Takuanyi's attorney, not SSPPD's. Takuanyi's presents no competent evidence to establish that Wilson was colluding with Tsai at the time Takuanyi alleges Wilson destroyed the file or that they are now colluding against Takuanyi. Even if Wilson were an adverse party, Wilson has presented evidence that he sent Takuanyi the file and that the file was delivered on June 21, 2021. Thus, even if the file was in fact lost, there is no evidence that **Wilson** destroyed it.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

-13-

1. Plaintiff's Motion to Reopen [Docket No. 38] is **DENIED**; and

2. Plaintiff's Motion for Spoliation of Evidence [Docket No. 66] is **DENIED**.

DATED: November 2, 2022  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
United States District Judge